OPINION
Plaintiff-appellant Harry Leffel appeals from an order of the trial court recalculating his child support obligation to defendant-appellee Virginia Leffel (nka Shatto). He contends that the trial court erred by modifying and increasing his support obligation to include: (a) the cost of Shatto's attorney fees to pursue this action; (b) support for a four-month period for one of the parties' children, Megan, which Shatto failed to request, and which no court order prior to Megan's emancipation required; and (c) a component reflecting his 1995 capital gains.
We conclude the trial court erred by: (a) failing to determine the reasonableness of Shatto's attorney fee award; (b) increasing Leffel's support to include the four-month period Megan resided with her mother; and (c) including nonrecurring 1995 capital gains in the recalculation of Leffel's support obligation. Consequently, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings in accordance with this opinion.
 I
This is the second time the parties have appeared before this court. Leffel and Shatto were divorced in August 1991. By agreement, Shatto was awarded custody of the parties' son, Antonio, while their daughter, Megan, remained with her father. Leffel was required to pay support for Antonio, which was reduced by court order in July 1993 due to a decrease in Leffel's income. In February 1994, after turning 18, four months prior to her emancipation, Megan moved out of her father's home and into her mother's residence. Megan graduated from high school on June 2, 1994. Neither party notified the Clark County Domestic Relations Court or the Clark County Child Support Enforcement Agency ("CSEA") of Megan's change of residence for this four-month period prior to her emancipation, nor did either party request a modification of support at this time.
In 1996, after CSEA submitted a set of administrative findings and recommendations to the domestic relations court recommending a modification of Leffel's support obligations, since his income had increased and Megan had reached the age of majority, Shatto filed the present action. As part of that action, Shatto requested an order finding Leffel to be in contempt for failing to notify CSEA of changes in his employment, as required under the 1993 order, a retroactive increase in child-support payments, an increase in future payments, and attorney's fees.
The trial court adopted a decision of the magistrate citing Leffel for contempt, and awarding Shatto contempt attorney fees and increased retroactive support to remedy the results of a scheme whereby Leffel had redirected his income to his new wife.[1] We reversed in part, finding that the 1993 order Leffel allegedly violated was not sufficiently specific in its requirements to justify a finding that Leffel had violated the order, and we vacated the award of attorney fees to Shatto, but we affirmed the award of a retroactive increase in child support payments for Antonio to remedy Leffel's fraudulent redirection of his income. Leffel v. Leffel (Oct. 24 1997), Montgomery App. No. 97-CA-20, unreported. The case was remanded solely to recalculate Leffel's child support obligations for Antonio. On remand, the trial court overruled Leffel's objections and adopted a magistrate's decision modifying and increasing Leffel's support obligations to include: (a) $1,936, the costs of Mrs. Shatto's attorney's fees to pursue this action, as a deviation from the child support guidelines; (b) support for the four-month period in which Megan resided with her mother prior to emancipation; and (c) a component reflecting Leffel's 1995 capital gains.
From this order, Leffel appeals.
 II
In his first assignment of error, Leffel argues:
 THE TRIAL COURT ERRED BY, IN EFFECT, AWARDING APPELLEE $1,936.00 IN ATTORNEY FEES IN THE FORM OF CHILD SUPPORT AND AS A DEVIATION FROM THE CHILD SUPPORT GUIDELINES BECAUSE, IN FACT, SAID $1,936.00 REPRESENTED ATTORNEY FEES WHICH APPELLEE HAD PREVIOUSLY SOUGHT IN CONNECTION WITH A CONTEMPT FINDING RENDERED BY THE CLARK COUNTY COMMON PLEAS COURT BUT SUBSEQUENTLY REVERSED BY THIS HONORABLE COURT OF APPEALS. IN OTHER WORDS, CALLING THE ATTORNEY FEES SOMETHING OTHER THAN ATTORNEY FEES, NAMELY CHILD SUPPORT, AND A DEVIATION FROM THE NORMAL CHILD SUPPORT GUIDELINES, THE TRIAL COURT ERRED IN ATTEMPTING TO AWARD ATTORNEY FEES FOR CONTEMPT OF COURT WHEN THE COURT OF APPEALS HAD PREVIOUSLY FOUND THE APPELLANT WAS NOT IN CONTEMPT OF COURT
Our standard of review in considering the decisions of a trial court concerning child support is abuse of discretion. Booth v. Booth (1989),44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030. The trial court's decision will not be disturbed absent a showing of abuse of discretion by the court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 5 OBR 481,450 N.E.2d 1140. A court abuses its discretion when its decision is "arbitrary, unreasonable, or unconscionable." Id.
Leffel claims that the trial court abused its discretion because it circumvented our previous holding, which denied Shatto her attorney's fees as a remedy for contempt, when it awarded those fees as additional child support. Essentially, he argues that absent a finding of contempt, the trial court had no basis to award as child support Shatto's legal fees relating to those proceedings. Further, he argues that even if an award of attorney's fees was appropriate, the court erred in not determining the reasonableness of the award.
We disagree with Leffel's first contention. A trial court may reasonably award attorneys fees and expenses in a support modification proceeding as a form of additional child support absent a finding of contempt. Absalom v. Absalom (Nov. 6, 1991), Summit App. No. 15211, unreported, at 5, citing Blum v. Blum (1967), 9 Ohio St.2d 92, 38 O.O.2d 224, 223 N.E.2d 819. See, also, Loc.R. 4.34 of the Common Pleas Court of Montgomery County, Domestic Relations Division. Although we concluded, in our disposition of Leffel's first appeal, that his fraudulent conduct in redirecting income to his new wife fell short of constituting contempt, because it did not clearly violate the 1993 order, Leffel's fraud did cause Shatto to incur attorneys fees while attempting to obtain additional support for Antonio. Thus, the court did not abuse its discretion by awarding Shatto attorneys fees as additional child support and a deviation from the child support guidelines when the court recalculated Leffel's support obligations.
We agree, however, with Leffel's second contention. Shatto had the burden of proving that attorneys fees were incurred, and that these expenditures were reasonable and necessary. Donese v. Donese (Sept. 29, 2000), Montgomery App. No. 2000-CA-17, unreported, at 4. In determining the reasonableness of the attorneys fees, the trial court must consider the factors set forth in DR 2-106(B), Code of Professional Responsibility. Swanson v. Swanson (1976), 48 Ohio App.2d 85, 91, 2 O.O.3d 65, 355 N.E.2d 894, 898-900. Typically, there must be evidence in the record of the time and labor involved, the fee customarily charged in the locality, and the nature and length of the professional relationship with the client. Id. Here the trial court abused its discretion by not considering certain factors enunciated in Swanson. The record demonstrates the only evidence before the court relating to Shatto's legal fees was Exhibit D-3, which referenced the hours expended and costs incurred by her counsel, and her statement that Exhibit D-3 accurately reflected the amounts of time she requested from her counsel to represent her in this case.
We recognize there are limited circumstances in which a court is permitted to use its own knowledge determining the reasonableness and necessity of attorney fees. See, e.g., Woloch v. Foster (1994),98 Ohio App.3d 806, 813, 649 N.E.2d 918, 922 (noting trial court did not abuse its discretion by awarding nominal attorney's fees without evidence of the amount of attorney fees actually incurred, or the reasonableness of that charge); Spencer v. Doyle (Sept. 22, 1993), Montgomery App. No. 92-CA-46, unreported at n. 4 ("On occasion, we have affirmed awards of attorney fees in small amounts, such as $150, without any evidence of reasonableness. Where the amount is small, and the fees pertain to services performed in the presence of the trial court, we have been willing to indulge in the assumption that the trial court properly took judicial notice of the reasonableness of the fees and their reasonable necessity. We do not regard an award in the amount of $1,500 as being appropriate for such expedited treatment"). The present case is distinguishable, however, since it involves more than a nominal fee.
Because the record lacks necessary findings regarding the reasonableness of the fee award, Leffel's first assignment of error is sustained.
 III
For his second assignment of error, Leffel contends:
 THE TRIAL COURT ERRED IN AWARDING CHILD SUPPORT TO APPELLEE FOR THE PARTIES' MINOR DAUGHTER, MEGAN, FROM FEBRUARY THROUGH JUNE, 1994 [sic] BECAUSE NO CHILD SUPPORT WAS SOUGHT BY APPELLEE AT OR ABOUT THE TIME AND THERE WAS NO COURT ORDER AT OR ABOUT THE TIME MANDATING APPELLANT TO PAY SAID CHILD SUPPORT
Leffel argues that Shatto's failure to seek child support for Megan for the four-month period prior to her emancipation precludes her from seeking support now. In response, Shatto argues that this is an appropriate case for the exercise of the trial court's equitable powers.
A residential parent is not entitled to recover child support from the other parent if she fails to place the non-residential parent under a court-ordered duty to pay child support prior to the child's emancipation. Cf. Wilmer v. Wilmer (1990), 66 Ohio App.3d 713, 716-17,586 N.E.2d 153, 154-55 (husband, custodial parent of parties' son, could not offset court-ordered child support obligations to ex-wife, custodial parent of the parties' daughter, since he failed to place the wife under a court-ordered duty to pay support prior to his son's emancipation, regardless of equitable considerations). Indeed, a trial court abuses its discretion when it orders child support for a child when no support order is made or requested at the time the residential parent's status changes. Hannas v. Hannas (1997), 123 Ohio App.3d 378, 379-80,704 N.E.2d 294, 295, citing Meyer v. Meyer (1985), 17 Ohio St.3d 222, 17 OBR 455, 478 N.E.2d 806, syllabus ("A custodial parent is not entitled to reimbursement for child support from the non-custodial parent where no support order is made or requested at the time custody is awarded").[2]
While we are sympathetic to Shatto, and the result may seem harsh, we are compelled to follow the law. Shatto had the means to place Leffel under a legal duty to pay child support for the four-month period Megan lived with her in 1994. Her failure to request this support until 1997, years after Megan's emancipation, precludes her from collecting that support now, and the trial court erred by including support for Megan in its recalculation of Leffel's obligations.
Shatto argues that her failure to have made a timely request for child support during the time when Megan was living with her ought not to prejudice Megan's right to support from her father. This argument would have more force if this were an action by Megan directly against her father for support. We presume that Megan was supported by her parents during her minority; this is an action by Shatto to recover from Leffel an award of money to adjust, between them, the economic burden of raising Megan.
Leffel's second assignment of error is sustained.
 IV
Leffel maintains in his final assignment of error:
 THE TRIAL COURT ERRED IN ADOPTING APPELLEE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING APPELLANT'S INCOME FOR 1995 BECAUSE IT INCLUDED THEREIN CAPITAL GAINS INCOME THAT IS OF A NON-REOCCURRING [sic] NATURE AND BECAUSE SAID CAPITAL GAINS WERE LARGELY ATTRIBUTABLE TO APPELLANT'S PRESENT WIFE
Leffel contends that the trial court erred as a matter of law when it included in his income nonrecurring capital gains of $4,068 earned from the 1995 sale of Mr. and Ms. Leffel's building lot located at 8800 Jones Road and capital gain dividends of $2,362, which he contends were received by Ms. Leffel, for the purpose of recalculating his child support obligations.
In calculating Leffel's child support obligations, the trial court must follow the provisions contained in R.C. 3113.215 (repealed).[3] The court must first determine Leffel's gross income. R.C. 3113.215(A)(2)(e) excludes certain types of income, e.g. nonrecurring income, from the calculation of an individual's gross income. R.C. 3113.215(A)(11) defines "nonrecurring income" as:
 any income or cash flow item that the parent receives in any year or for any number of years not to exceed three years and that the parent does not expect to continue to receive on a regular basis. "Nonrecurring or unsustainable income or cash flow item" does not include . . . income or cash flow that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests or otherwise utilizes to produce income or cash flow for a period of more than three years.
(Emphasis added).
Additionally, the trial court may not include Leffel's spouse's income, whether ordinary or capital gains, in its calculation of his gross income to determine his support obligations. Inscoe v. Inscoe (1997), 121 Ohio App.3d 396, 423, 700 N.E.2d 70, 87, citing R.C.3113.215(B)(5)(e).
A one-time gain from the sale (not in the ordinary course of business) of a lot constitutes nonrecurring income regardless whether the capital gain is attributed to Leffel or his new spouse. Cf. Smith v. Smith (Dec. 4, 1998), Montgomery App. No. 98 CA 4, unreported, at 2-3 (capital gain earned from one-time sale of home, which party planned to use to purchase another home, was non-recurring income and was properly excluded from gross income in the calculation of child support). There was no evidence in the record that Leffel continued to receive income from this one-time sale in the future or that he reinvested or utilized it to produce income or cash flow for a period of more than three years. Thus, the trial court abused its discretion when it included 1995 capital gains attributed to the sale of the lot to recalculate Leffel's child support obligations. Yost v. Unanue (1996), 109 Ohio App.3d 294, 297-98, 671 N.E.2d 1374,1376 (trial court abused its discretion by including nonrecurring capital gain as income when modifying child support order).
As for the dividend capital gains, the trial court determined they belong to Leffel. While Leffel testified that the dividends belonged to his wife, the 1994 tax returns present conflicting evidence regarding who earned the 1995 dividend gains. The Leffels' 1994 tax returns contain hand-written notes indicating that this capital gain distribution is attributable to the current Ms. Leffel. However, the same returns acknowledge, in a hand-written note on Schedule B, statement 6, that the capital gain distributions for the IDS Managed Retirement Fund, IDS Discovery Fund, and IDS Diversified Equity Income Fund belong to Mr. Leffel. Part of these dividends appear to be the same dividend capital gains that Mr. Leffel claims belonged to his wife in 1995. Given Leffel's propensity, in this litigation, to shift income to his new wife, the trial court cannot be faulted for having resolved this issue of fact adversely to him.
However, the record provides no evidence that Leffel received income from the dividends for more than three years. Thus, the court abused its discretion by not determining whether the dividends were non-recurring income under R.C. 3113.215 before including them as part of Leffel's gross income to recalculate his support obligation.
Leffel's third assignment of error is sustained.
 V
All of Leffel's assignments of error having been sustained, the judgment of the trial court recalculating his child support obligation, pursuant to the mandate of this court following his first appeal, is Reversed, and this cause is Remanded for recalculation of Leffel's child support obligation, consistent with this opinion.
 ________ FAIN, J.
BROGAN and GRADY, JJ., concur.
[1] Under the contract, Leffel, a broker, allowed his current wife, an agent, to keep 100% of her commissions while he paid most of the costs. In 1994 and 1995, Ms. Leffel earned more than her husband.
[2] We see no reason to differentiate, for purposes of this analysis, between the status of residential parent under the current law, and the status of custodial parent under prior law.
[3] R.C. 3113.215 governs this assignment of error because the parties began this action prior to its repeal. Cf. Weist v. Weist (Mar. 10, 2000), Montgomery App. No. 1498, unreported at 5-6, citing R.C.1.58.